# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

American Family Mutual Insurance
Company, S.I.,

                Plaintiff,

v.

C.C., a minor, by and through
his mother and natural guardian,
Heidi Clobes; Jose Castillo, an
individual; Salvador Chavez, Jr., an
individual; Curtis Nash, an individual;
Alyssa Sanford, an individual; and Juan
Carlos Lamas, Jr., an individual,

                Defendants.

Civil No. 18-2342 (DWF/ECW)

**MEMORANDUM
OPINION AND ORDER**

---

Brendan M. O'Connell, Esq., and Jeanette Y. Wong, Esq., counsel for Plaintiff.

Randall G. Knutson, Esq., Knutson+Casey Law Firm, counsel for Defendant C.C.

Barbara Marchevsky, Esq., and Lora Mitchell Friedemann, Esq., Fredrickson & Byron, P.A., counsel for Defendant Juan Carlos Lamas, Jr.

---

## INTRODUCTION

This is an action for declaratory relief brought by Plaintiff American Family

Mutual Insurance Company ("American Family"), seeking a declaration of rights, duties,

and obligations between American Family and Defendant C.C., a minor, by and through

his mother, Heidi Clobes ("Clobes")[1] with respect to a controversy arising under a family car insurance policy issued to Clobes.  (*See generally* Doc. No. 1 ("Compl.").)  The case is before the Court on American Family's motion for summary judgment (Doc. No. 71) and Defendant Juan Carlos Lamas, Jr.'s ("Lamas") motion to dismiss (Doc. No. 65).  For the reasons set forth below, the Court denies American Family's motion for summary judgment and grants Lamas' motion to dismiss.

## BACKGROUND

On September 10, 2017, Lamas attended a party at a location in an apartment complex in Mankato, Minnesota.  In a parking lot adjacent to the apartment complex, Defendant C.C. was standing and socializing with a separate group of people.  (Doc. No. 82 ("C.C. Memo.") at 2.)  Lamas hit and injured several bystanders, including Defendant Batson and C.C., with his car while fleeing a fight.  (Doc. No. 74 ("Wong Decl.") ¶ 7 ("Plea Hr'g Tr.") at 18.)  An officer on patrol saw people running into, and a car "careening" out of, the parking lot.  (*Id.* at 16.)  Police responded and pursued Lamas, who was stopped and arrested.  (*Id.* at 17.)  Lamas admitted he had been drinking.  (*Id.* at 18.)  Some witnesses at the scene claimed that it appeared that Lamas intentionally drove into the bystanders.  (*Id.* at 19.)  Lamas was charged with twelve counts of felony

---

[1]     As noted in C.C.'s memorandum opposing American Family's motion for summary judgment, C.C. is no longer a minor.  (Doc. No. 82 at 1.)  The Court will continue to refer to him as "C.C." for the sake of clarity.

assault and criminal vehicular operation and one count of misdemeanor DWI.[2]  (Wong

Decl. ¶ 6, Ex. 3 ("Register of Actions") at 1.)  Lamas submitted an *Alford* plea to three

counts of second-degree assault with a deadly weapon with the understanding that the

State would dismiss the remaining charges.[3]  (Register of Actions at 5; Plea Hr'g Tr. at

21.)  Lamas did not claim to be innocent of the charges to which he pled guilty, but

specifically claimed that he "did not intentionally and purposely with intent hit those

people with [his] car."  (Plea Hr'g Tr. at 11.)  In his interrogatories, Lamas contends that

he did not intend or expect to injure C.C., did not know C.C., and that it was dark and he

did not see the bystanders before hitting them.  (Doc. No. 83 ("Knutson Aff.") ¶ 3, Ex. 2

at 1-4, 7.)  Lamas was ordered to pay restitution to three victims as a condition of his

sentence.[4]  (Register of Actions at 2.)

---

[2]      *State of Minnesota v. Juan Carlos Lamas, Jr.*, Case No. 07-CR-17-3401, filed
Sept. 12, 2017.

[3]      Under Minnesota law, "a trial court may accept a plea of guilty by an accused
even though the accused protests that he is innocent if the court, on the basis of its
interrogatories of the accused and its analysis of the factual basis offered in support of the
plea, concludes that the evidence would support a jury verdict of guilty, and that the plea
is voluntarily, knowingly, and understandingly entered."  *State v. Goulette*, 258 N.W. 2d
758, 761 (Minn. 1977) (adopting *North Carolina v. Alford*, 400 U.S. 25 (1970)).  The
Court observes that in its nearly fourteen years on the State District Bench in Minnesota
and seven-plus years as a prosecuting attorney, this Court declined to ever permit an
*Alford* plea to avoid exactly the situation here, namely a defendant accepting in effect a
plea of guilty to a serious intentional assault while proclaiming innocence, which is
admittedly entirely appropriate under *Goulette* and *Alford*, *supra*.

[4]      At oral arguments, none of the parties' counsel could provide more information
about the identities of the victims awarded restitution in the criminal matter, and two
victims are not named in the Register of Actions.  (Doc. No. 91 ("Mot. Hr'g."); Register
of Actions at 2.)  There are only three victims listed, one of which is State Farm.

On October 16, 2017, Alec Batson and C.C., by and through his mother, filed a civil lawsuit against Lamas in state court.[5]  (Wong Decl. ¶ 8, Ex. 5 ("Underlying Litigation").)  In the Underlying Litigation, plaintiffs allege that Lamas negligently caused "severe and permanent" injuries as a result of the September 10, 2017 incident, and requested judgment in an amount greater than $50,000 for both parties.  (Underlying Litigation.)  C.C., by and through his mother, Heidi Clobes, had a car insurance policy (the "Clobes Policy") through American Family.  (Wong Decl. ¶ 9, Ex. 6.)

The coverage policy for uninsured motorists provides:

### PART III – UNINSURED MOTORISTS COVERAGE

. . .

**We** will pay compensatory damages for **bodily injury** to an **insured person** who is legally entitled to recover from the owner or operator of an **uninsured motor vehicle**. The bodily injury must be caused by accident and arise out of the use of the **uninsured motor vehicle**. . . .
. . .

**Uninsured motor vehicle** means a **motor vehicle** which is:

a. Not insured by a **bodily injury** liability bond or policy at the time of the accident.
b. Insured at the time of the accident by a liability bond or policy with **bodily injury** liability limits below the minimum required by the financial responsibility law of the **state** in which **your insured car** is principally garaged.
c. A hit-and-run vehicle whose operator or owner is unknown and which causes **bodily injury** to **you** or a **relative**.
d. Self-insured or insured by a **bodily injury** liability bond or policy at the time of the accident but the self-insurer or company denies coverage or is or becomes insolvent within one year after the accident.

---

[5]     *Alec Batson, and Heidi Clobes, mother and natural guardian of C.C., a minor v. Juan Carlos Lamas, Jr.*, Case No. 07-CV-17-4090, filed in Blue Earth Co. in the Fifth Judicial District of Minnesota.  Batson was dismissed as a defendant in this case in a previous order.  (Doc. No. 59 ("May 1, 2019 Order").)

(*Id.* at 3.)  American Family sent Clobes a "Reservation of Rights" letter on April 24, 2018, stating that a claim under the uninsured motorist policy may not be covered because "[t]he incident may not have been an accident."  (Wong Decl. ¶ 11, Ex. 8 at 1-2.)

On May 14, 2018, American Family filed a Rule 24 Notice of Application for Intervention to the Underlying Litigation.  (*Id*. ¶ 10, Ex. 7.)  American Family claimed that any injuries or damages as a result of the September 10, 2017 incident were not "the result of an accident," but rather "the result of an intentional act as defined by the insurance policy and Minnesota law."  (*Id.* ¶¶ 6-7.)

On August 9, 2018, American Family commenced this federal action against Batson, C.C., Lamas, Jose Castillo, Salvador Chavez, Jr., Yi Chen, Donovan Hall, K.J., a minor, Jacob Kotz, Curtis Nash, and Alyssa Sanford.  (Compl. ¶¶ 5-14.)  American Family later agreed to voluntarily dismiss defendants Batson, K.J., Chen, Hall, and Kotz without prejudice.  (Doc. Nos. 57, 59, 62, 64.)  Lamas also requested a voluntary dismissal, but American Family refused.  (Doc. No. 68 ¶ 4.)  In this action, American Family seeks a declaration that any "bodily injury" alleged by C.C. in the Underlying Litigation was not the result of an accident and is therefore not covered under Clobes Policy's uninsured motorist coverage.  (Compl. ¶¶ 25-26; Wong Decl. ¶ 11, Ex. 8.)  American Family also seeks taxable costs and disbursements, and such other relief as the Court deems just and equitable.

On September 6, 2019, Lamas filed a motion to dismiss. On September 10, 2019, American Family filed a motion for summary judgment. The Court considers both motions below.

## DISCUSSION

### I.      Summary judgment

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Weitz Co. v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Here, American Family contends that interpretation of an insurance policy is a question of law, and that there are no genuine disputes over material facts. (Doc. No. 73 at 4-5.) American Family argues that C.C. cannot prove that his injuries were caused in an accident and therefore there is no coverage under the Clobes Policy. Specifically, American Family points to Lamas' *Alford* plea as an admission of an intentional act and recognition of sufficient evidence to convict him of an intentional act, despite the fact that Lamas contends that his acts were not intentional. (*Id.* at 7-8.) In addition, American Family believes that intent can be inferred as a matter of law because Lamas "should have known that harm was substantially certain to result from driving drunk in a parking lot filled with people." (*Id.* at 7.)

C.C. argues that summary judgment is inappropriate because Lamas' state of mind at the time of the incident creates a genuine factual dispute and because American Family's interpretations of the term "accident" and intentional act exclusions under Minnesota law are incorrect. (Doc. No. 82 at 22.) Further, C.C. argues that "issues related to the insured's state of mind are questions of fact" that "are not generally appropriate for summary judgment." (*Id.* at 7.) C.C. also contends that under Minnesota law, American Family must prove that Lamas had "intent to injure," not just whether the conduct was intentional. (*Id.* at 8.) C.C. argues that while Lamas may have intentionally driven his car under the influence of alcohol and in a dangerous manner, he did not intend to injure the bystanders, meaning that the collision would constitute an "accident" under Minnesota law and be covered under the Clobes Policy. (*Id.* at 8, 10.) Finally, C.C. believes that the Clobes Policy is ambiguous with regards to the definition of "accident,"

and therefore contends that the Clobes Policy should be "resolved by interpreting the ambiguity in accordance with the reasonable expectations of the insured." (*Id.* at 13.)

Because this case is before the Court based on diversity jurisdiction, the Court applies federal procedural law and state substantive law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). The parties agree that Minnesota's substantive law controls the analysis of the insurance policy. Under Minnesota law, interpretation of an insurance policy is a question of law. *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006). Interpretation of insurance contracts follows the general rules of contract law, giving words their plain and ordinary meaning to honor the parties' intent, and construing ambiguities in favor of the insured. *Am. Family Ins. Co. v. Walser*, 628 N.W.2d 605, 609 (Minn. 2001); *Econ. Premier Assur. Co. v. W. Nat. Mut. Ins. Co.*, 839 N.W.2d 749, 752 (Minn. Ct. App. 2013).[6]

Insurance policy exclusions must be given the same consideration as any other part of the contract in determining the scope of coverage. *Thommes v. Milwaukee Ins. Co.*, 641 N.W.2d 877, 880 (Minn. 2002). Under Minnesota law, Courts are required to read policies in favor of finding coverage, construing words of inclusion broadly, but

---

[6]     Whether the language of an insurance policy is ambiguous is also a question of law. *Columbia Heights Motors, Inc. v. Allstate Ins. Co.*, 275 N.W.2d 32, 34 (Minn. 1979). "If the language of the policy is reasonably subject to more than one interpretation, there is ambiguity. If it is not reasonably subject to more than one interpretation, there is no ambiguity." *Id.* Ambiguities are interpreted against the insurer, and in favor of the insured, in favor of finding coverage. *Econ. Premier Assur. Co.*, 839 N.W.2d at 755. However, courts should resist finding ambiguity where none exists. *Metro Prop. & Cas. Ins. Co. v. Jablonske*, 722 N.W.2d 319, 324 (Minn. Ct. App. 2006).

words of exclusion narrowly. *Westfield Ins. Co. v. Robinson Outdoors, Inc.*, 700 F.3d 1172, 1174 (8th Cir. 2012). The language of an exclusion is to be interpreted in accordance with the expectations of the insured. *Thommes*, 641 N.W.2d at 880.

Minnesota's reasonable expectations doctrine provides that the "objectively reasonable expectations" of the insured regarding insurance terms will be honored even if a study of the policy provisions would negate those expectations. *Babinski v. Am. Fam. Ins. Grp.*, 569 F.3d 349, 353 (8th Cir. 2009). This doctrine, however, is "extremely narrow and applies only on the few egregious occasions when an exclusion is disguised in a policy's definitions section." *Id.* (internal quotation marks omitted). The doctrine does not apply where an insurance policy is not ambiguous and does not contain a "hidden" exclusion. *Id.* (internal quotation and citations omitted).

The Clobes Policy provides uninsured motorists coverage excluding injury not caused by accident. (Clobes Policy at 3 ("The bodily injury must be caused by accident.").) The term "accident" is not defined in the Clobes Policy. The Minnesota Supreme Court has defined "accident" as "an unexpected, unforeseen, or undesigned happening or consequence." *Walser*, 628 N.W.2d at 611; *see also RAM Mutual Ins. Co. v. Meyer*, 768 N.W.2d 399, 403 (Minn. Ct. App. 2009). "[W]here there is no intent to injure, the incident is an accident even if the conduct itself is intentional." *Walser*, 628 N.W.2d at 612. An intentional act exclusion applies "only where the insured acts with the specific intent to cause bodily harm." *R.W. v. T.F.*, 528 N.W.2d 869, 872 (Minn. 1995). Accidental conduct and intentional conduct "are opposite sides of the same coin," and intentional acts that are not intended to injure qualify as an accident. *Walser*, 628

N.W.2d at 611, 613.  "[W]here there is specific intent to cause injury, conduct is intentional for purposes of an intentional act exclusion, and not accidental for purposes of a coverage provision."  *Id.* at 612.  Importantly, the purpose of intentional act exclusions is to exclude coverage for "wanton and malicious acts" by an insured.  *Id*. at 613.  Insurance is designed to protect against the consequences of unintended and accidental actions, "even those undertaken with breathtaking stupidity and resulting in serious injury."  *State Farm Fire & Cas. Co. v. Schwich*, 749 N.W.2d 108, 115 (Minn. Ct. App. 2008).

In addition to providing evidence of actual intent to injure, an insurer can prove intent to injure by inferring intent as a matter of law.  *Id.*at 112.  This can be done when the nature and circumstances of the act is substantially certain to cause harm.  *Id*.  And while courts generally infer intent to injure as a matter of law when the injury involves a criminal act of a serious nature, Minnesota courts decline to infer intent for criminal acts involving "minor or reflexive conduct."  *Id*. at 112 n.1.  In order to infer intent, a court must conclude that the insured acted with "deliberate and calculated indifference to the risk of injury" to the person harmed.  *Walser*, 628 N.W.2d at 614.

A car is an inherently dangerous instrument.  *Brown v. Am. Nat. Prop. & Cas. Co.*, Civ. No. A08-1208, 2009 WL 1119166, at *3 (Minn. Ct. App. Apr. 28, 2009).  Moreover, voluntary intoxication may not be used to deny intent where the circumstances otherwise compel an inference of intent to injure.  *Am. Fam. Mutual Ins. Co. v. Peterson*, 405 N.W.2d 418, 422 (Minn. 1987).

American Family argues that Lamas' acts were not an accident.  In particular, American Family argues that Lamas was angry and drunk and that he intentionally drove a car towards a group of people.  American Family contends that, despite Lamas' denial that he intended to harm anyone, he should have known that harm was substantially certain to result from his actions and, therefore, intent can be inferred.  In addition, American Family points out that Lamas admitted to an intentional act when he accepted an *Alford* plea.[7]  For these reasons, American Family argues that C.C.'s injuries did not result from an accident and, therefore, American Family is entitled to summary judgment.

C.C. contends that the record shows that Lamas was intoxicated and driving to get away from a fight that had broken out at a party near where C.C. and others were congregating.  C.C. has pointed to evidence that could show that Lamas was not intending to hit or injure anyone, but instead that he was attempting to get away from a dangerous situation.  While Lamas was intoxicated, C.C. maintains that Lamas' intoxication does not void insurance coverage under the Clobes Policy.

After a careful review of the record and in consideration of the parties' arguments, the Court concludes that fact issues remain with respect to Lamas' intent that preclude

---

[7]     At oral arguments, counsel for C.C. raised the interesting question of whether the fact of Lamas' convictions would be admissible at trial in the Underlying Litigation. (Mot. Hr'g.)  The Court observes that American Family's arguments place greater significance on the conviction itself in answering the question of whether intent existed, while C.C. places greater importance on Lamas' statements during his change of plea hearing.  It is not necessary to reach or decide the merit of either position because the facts of this case do not require a separate, criminal-law determination of intent.  The Court acknowledges that this evidentiary issue will have to be addressed prior to trial unless the case is settled.

summary judgment.  Specifically, C.C. has pointed to record evidence that could lead a reasonable juror to conclude that Lamas did not intend to injure C.C.  For example, there is record evidence that Lamas says he did not intend to injure C.C. or the other bystanders who were injured.  In fact, Lamas stated that he did not know C.C. or the others and had not spoken to them that night or on any other occasion.  He also maintains that he had no reason to attempt to injure them and, in fact, it was dark when the accident occurred and he had no recollection of seeing them in the parking lot before hitting them.  Because fact issues remain with respect to Lamas' intent, the Court finds that American Family's motion for summary judgment is properly denied.

The Court acknowledges that this is a very close call.  As stated by Justice Paul Anderson in *Walser*:  "In order for coverage to be excluded as intentional, the Court must find that the insured acted with 'specific intent to cause' harm and that the insured 'intended the harm itself, not merely that the insured generally intended to act."  *Walser*, 628 N.W.2d at 611.  Consequently, Justice Anderson goes on to state:  "[W]e conclude that in analyzing whether there was an accident for purposes of coverage, lack of specific intent to injure will be determinative."  *Id*. at 612.  However, Justice Anderson also gives examples of where the Court has inferred intent as a matter of law, specifically when an individual "acted with deliberate and calculated indifference to the risk of injury."  *Id*. at 614.  The Court concurs with the observation in *Walser* that there is no bright line rule as to when a court should infer intent to injure as a matter of law, so the determination is often made through a case-by-case factual inquiry, especially when there are issues relating to the state of mind of the individual who caused the injury—in this case, Lamas.

## II.      Lamas' Motion to Dismiss

American Family's complaint alleges one cause of action:  declaratory relief construing the Clobes Policy between American Family and C.C.  Lamas separately moves to dismiss American Family's case as it is asserted against him on the grounds that the Court lacks subject matter jurisdiction because American Family fails to allege any case or controversy between it and Lamas.

The Federal Declaratory Judgment Act provides that:

> In a case of actual controversy within its jurisdiction . . .  any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a).[8]  Federal jurisdiction is limited by Article III of the Constitution to "cases and controversies," *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 964, 958 (8th Cir. 2011), and accordingly, federal courts only have jurisdiction to issue declaratory judgments where there is an actual "case or controversy," *Marine Equip. Mgmt. Co. v. United States*, 4 F.3d 643, 646 (8th Cir. 1993).  The case-or-controversy requirement is satisfied when a declaratory judgment action is "definite and concrete, touching the legal relations of parties having adverse legal interests," "real and substantial," and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state

---

[8]      The omitted portion of the statute was amended under the United States-Mexico-Canada Agreement Implementation Act, Pub. L. 116-113, January 29, 2020, 134 Stat. 11 at *66 in such a way that it does not alter the applicability of the Federal Declaratory Judgment Act in this case.

of facts." *McLeod v. Gen. Mills, Inc.*, 856 F.3d 1160, 1166 (8th Cir. 2017) (quoting

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (alteration and citation

omitted)).

A court's subject matter jurisdiction may be challenged by a party or raised by the

court *sua sponte* at any time under Federal Rule of Civil Procedure 12(b)(1), and the

court must dismiss any action over which it lacks jurisdiction. Fed. R. Civ. P. 12(h)(3)

("If the court determines at any time that it lacks subject-matter jurisdiction, the court

must dismiss the action.").  *See also Moubry v. Indep. Sch. Dist. No. 696*, 951 F. Supp.

867, 882 (D. Minn. 1996) (citation omitted); *Bueford v. Resolution Trust Corp.*, 991 F.2d

481, 485 (8th Cir. 1993)).  Lamas argues that this Court lacks subject matter jurisdiction

because there is no legal relationship between American Family and himself as he is not a

party to the Clobes Policy and has no privity of contract.  (Doc. No. 67 at 3-5.)  Lamas

likewise argues that he is not a third-party beneficiary of the Clobes Policy because

uninsured motorist clauses only benefit policyholders under Minnesota law.  (*Id.* at 6-7.)

Finally, Lamas argues that the interpretation of the Clobes policy will not meaningfully

affect his rights or obligations.  (*Id.* at 7-8.)

American Family counters that Lamas is an interested party in the action and that

the outcome of this case will determine his rights in the underlying civil action.  (Doc.

No. 79 at 6-7.)[9]  American Family argues that the disposition of the requested declaratory

---

[9]     American Family also argues that this case involves the Federal Power Act, which
does not require privity of contract or third-party beneficiary status, but instead only that
there be an adverse legal interest.  (Mot. Hr'g at 49.)

judgment in this case will determine whether Lamas is solely liable to defendants Batson and C.C. in the Underlying Litigation, making Lamas an interested party. (*Id.* at 6.) American Family also contends that under Minn. Stat. § 555.11, a declaration in this case without Lamas would prejudice his rights and require additional litigation. (*Id.* at 7.)

The Court observes that the probable outcome of the Underlying Litigation is that, if liability for negligence is found for injuries to C.C. and damages are awarded, such an order would be against Lamas directly, or if American Family must provide coverage, it will seek reimbursement from Lamas. In this case, American Family is seeking the Court's construction of an insurance policy to which Lamas is not a party. The Court is not convinced that Lamas' legal interests are implicated in the interpretation of the Clobes Policy. As a result, the Court is not persuaded that Lamas is subject to its jurisdiction. Accordingly, the Court grants Lamas' motion to dismiss.

## CONCLUSION

The Court denies American Family's motion for summary judgment and grants Lamas' motion to dismiss. The Defendant should not equate the fact that they have prevailed on Plaintiff's motion for summary judgment with the likelihood that they will prevail at trial. From the Court's perspective, this will be a very difficult case for the factfinder, be it the Court or a jury, to conclude that this was an accident as that term will be defined. The Court, with the help of the Magistrate Judge, will make itself available for a settlement conference. Based on the record before the Court, a settlement conference would likely serve the best interests of all parties concerned in this difficult case.

## ORDER

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Plaintiff American Family Mutual Insurance Company's Motion for Summary Judgment (Doc. No. [71]) is **DENIED**.

2.      Defendant Juan Carlos Lamas, Jr.'s Motion to Dismiss (Doc. No. [65]) is **GRANTED**.  Defendant Juan Carlos Lamas, Jr. is **DISMISSED** as a defendant in this case.

Dated:  May 11, 2020                           s/Donovan W. Frank
                                               DONOVAN W. FRANK
                                               United States District Judge